Thank you, Your Honor. I please the court, George Piemonte, on behalf of the appellant Brian Pepper. This is a case from a social security disability claim in which the administrative law judge has committed at least two errors that would warrant remand for a new hearing. Excuse me. The first involves an opinion questionnaire filled out by Mr. Pepper's treating gastroenterologist, Dr. Kandekar. I believe I'm pronouncing that correctly. The ALJ found Dr. Kandekar's opinion persuasive except for one portion of it, which she has the right to do so long as that rejection of that particular part of his opinion is supported by substantial evidence. Which part of his opinion do you think the ALJ rejected? The part she rejected was where Dr. Kandekar stated that Mr. Pepper would need two to three unscheduled bathroom breaks lasting on an average of about 15 minutes. So that is not, I'm glad we're getting here quickly because I understand that's sort of the main premise of your argument. And that's just not how I read the ALJ opinion. I thought the ALJ did incorporate that. That's how you get to the part where the ALJ says that the 10% time off from task limit is to cover the bathroom breaks that Dr. Kandekar anticipated. No more than two to three per an eight hour day, no more than 15 minutes each. That's 10%. But then she goes on, and this is record page 24 in the first full paragraph. She goes on to say, but noting that greater limitations during flares would be inconsistent. That to be a reference to hit to your client's testimony. Your client disagreed with his doctor and said, no, no, during flares, I need more than what my doctor says. And so this to me looks like the ALJ saying, I'm going with the doctor over your client's own testimony. But then she's still wrong in not explaining why, because the vocational expert testified that that limitation would preclude work. And that is page, here it is, I'm sorry. On record page 52, when asked if they would regularly require two to three unscheduled restroom breaks or unscheduled restroom breaks lasting up to 15 minutes per break, and that would be on a daily basis, the vocational expert responded, I think the biggest part of that would be the unscheduled, and then unfortunately it's inaudible. Then the expert goes on to say, if they were leaving the workstation when they weren't supposed to, that's not going to be tolerated. Isn't that just a, I mean, that's just a dispute about the facts, right? Where the doctor said he'll have 15 minutes of notice. The ALJ, excuse me, accommodated that by saying, no, none of this fast-paced assembly line work, you know, this 15 minutes notice, is that unscheduled or not? These are all kind of nitty-gritty factual questions of making sure that every, you know, we're all speaking in the same terms, right? The ALJ was on the ground and was able to do that, and you're asking us to interpret unscheduled to mean something different, it sounds like. No, you're right. Well, no, what I'm asking the court to do is the fact that the ALJ rejects that need, either if, well, we're not sure because her decision isn't really clear. If she accepted that from Dr. Kandekar, then she didn't explain why she didn't accept the VE testimony that that would preclude work, which she has a right to do, but she has to explain why she didn't accept that testimony from the expert. If she did not accept Dr. Kandekar's opinion as far as the two to three unscheduled breaks lasting up to 15 minutes, she did that based on a mistake of fact. It seemed like she followed Dr. Kandekar's questionnaire response kind of to the T. But if you go on reading her decision, I don't think she did, Your Honor, because she says, excuse me, she said that first, that Pepper had, and this is quote from record page 24, that Mr. Pepper had no symptoms on Balsazide, and then she cites to exhibit 24F. That is not correct. Dr. Kandekar completed his questionnaire on January 22, 2019. He examined Mr. Pepper that same day, and on record pages 1184, 1187, and 1194, he documents that Pepper was taking Balsazide at the time. Record pages 1187 and 1195 document that at that exam, Mr. Pepper was, and this is quote from those two pages, positive for abdominal distension, abdominal pain, anal bleeding, and diarrhea. So again, her statement that he had no symptoms while on Balsazide is incorrect. At Pepper's last visit with Dr. Kandekar, that's in the record, that was on July 31, 2019. Record pages 1168, 1171, 1173, and 1177 show he was still taking Balsazide, and that the treatment notes on pages 1169 and 1171 says symptoms over the last six months are GI symptoms similar, and then in parentheses, three to four loose stools, some blood, fissure symptoms, no fever, obstruction symptoms. Later, further down that page, bowels, watery, or- There's sometimes in these cases, there's a problem with mistaking the- losing the forest for the trees, and the thing I wanted was that it seemed to me that Dr. Kandekar's overall conclusion read something like this, that to quote, aside from the need to take restroom breaks, getting a job will help him psychologically and for health insurance. And, you know, we're talking about an individual who is in his 20s or whatever, and it seemed to me that Dr. Kandekar was saying, isn't that a little bit early to be giving up on life? Try to go back, get a job, see what psychological benefits it brings. It could help- having- taking your mind off yourself and having a job and getting it- getting your mind fixed on workplace opportunities and the rest, it can produce significant benefits. That's what Dr. Kandekar was saying, and I repeat, you know, the doctor seemed to me to saying for this individual, this is a little early, but pretty young age to be giving up on life. And that's what I read the doctor to be saying overall. What's wrong with that? Well, what's wrong with that, Your Honor, is in all due respect to Dr. Kandekar, he's not a vocational expert. And the vocational expert testified that given his limitations that he opined Mr. Pepper would have, if he did try to work, the need to have two to three unscheduled bathroom breaks lasting up to 15 minutes would preclude work. So while Dr. Kandekar's intents may be all well-intentioned for his patient- You can probably refresh my memory on this, but I thought the AL- I'm sorry, the vocational expert, there was some back and forth about that for sure. But I thought that the ALJ sort of addressed that and said, look, I'm going with the doctor's testimony and on the doctor's testimony, this is going to work. Like the off-task, my 10% off-task limit is going to be sufficient. But the vocational expert's testimony doesn't support that conclusion and the ALJ didn't explain why she didn't accept that. She does not have to take the expert's testimony, but she does have to explain based on what evidence she was rejecting that part of the expert's testimony. And she did not do so. And so when you take both Dr. Kandekar's opinion and the vocational expert's testimony based upon that opinion, Mr. Pepper is not able to sustain employment. Excuse me. The ALJ also was mistaken in the belief that Mr. Pepper was not taking balsalicide between his January 2019 visit and his July 2019 visit. Dr. Kandekar's July 31st treatment notes show that that's not correct. On pages 1167 and 1168, it shows that a Francis P. Hufstadler, apparently one of Dr. Kandekar's staff, noted at 9.43 a.m. that he was taking balsalicide. Dr. Kandekar started recording his notes at 9.45, so that recording of what medications he was taking was taken before he was seeing the doctor. And Dr. Kandekar electronically signed the progress note at 10.07 a.m. That's record page 1173. Record page 1171 documents current medications includes balsalicide. Page 1173 shows balsalicide as active. And Dr. Kandekar on 1177 says Mr. Pepper is on balsalicide. On March 4th, 2019, Dr. Kandekar recorded that Mr. Pepper was on balsalicide. That's record pages 890. All right. Counsel, thank you so much. You have some time reserved for rebuttal. All right. Mr. Feldman. Thank you. Good morning. May it please the court. I'm William Feldman, a Special Assistant United States Attorney, and I'm arguing on behalf of the Acting Commissioner of Social Security. We ask this court to affirm the judgment below. Now, as your Honor is just referring to, Brian Pepper was just 27 years old when he applied for disability benefits. He claimed disabled due to Crohn's disease, as well as anxiety and depression. But as your Honor has just mentioned, Pepper's own gastroenterologist, Dr. Kandekar, opined that Pepper had a good prognosis on medication, that he could handle even moderate stress at work, and that working, what is just noted, would help him psychologically. Beyond that, no doctor in the record opined that Pepper's physical or mental limitations rendered him unable to work. Not one. And the treatment- Counsel, what efforts was he making to find work and to hold down a job? Okay. Well, Mr. Pepper previously worked at a Walmart for about a year, worked about 32 hours a week at times. He was part-time, but would approach full-time work. And during that time, that was actually after he'd been diagnosed with Crohn's, and while he was working with the disorder. And he also worked at a few other electronics companies. I would say beyond that, he also firmly said how he wanted to get back to work. He was talking about how he wanted to, on the psychological side, he wanted to start a work program, and he could find a desk job, something doing technology. He couldn't work. Those are his own words. Now, beyond that, so the ALJ looks at a thousand-page record, hears the testimony, and determines, okay, Mr. Pepper has these impairments. He has Crohn's, he has anxiety and depression, and he has some limitations from them. Certainly, he does. He's not cured, he's not symptom-free, that's not the finding of the ALJ. But notwithstanding those limitations, he could still do some jobs, and those are the jobs that are identified in the decision. Again, the key piece of this is on pages 19 through 24 of the record, which is the RFC, the Residual Functional Capacity Discussion, or RFC. That's kind of where we're having the issue in this case. And there's, as Judge Harris was mentioning, the ALJ recognizes that in addition to the usual breaks that happen during the day, so in the morning, the lunchtime, and afternoon periods, he would have an additional 10% of the day, about 45 extra minutes, to use the restroom as needed for his Crohn's symptoms. Beyond that, the ALJ is also aware of his social anxiety, and so, for instance, said he could only do jobs that involved no more than occasional interaction with the public and coworkers. So, after considering the record, considering a vocational expert testimony, the ALJ concluded that Pepper was not disabled because he could perform certain unskilled light work jobs. Now, I think Judge Wilkinson mentioned the idea about seeing the forest for the trees, and this is a great example of that. I mean, here you have his own gastroenterologist saying that Pepper had no major restrictions, had a good prognosis, that working would help him psychologically. The ALJ's opinion well aligns with that. It says, okay, you have symptoms, but you can still work. And that's when that's where he comes down and finds that Mr. Pepper's not disabled. So, counsel, I think there was some discussion by the district court, if I'm remembering right, about this new regulation on treating physicians. Is that regulation even implicated in this case, where the ALJ did adopt the views of the treating physician and there is no competing medical opinion? Well, okay. Well, two things on that. One is we're under a new rubric that's no longer applying the treating physician rule. That was- I'm sorry, that's what I meant. Is that new implicated in this case? The new non-treating physician. Yes. And that's basically any doctor, you look at persuasiveness of the opinion based on supportability and consistency, how internally supported it is, how consistent it is with the rest of the record. Right. But is that requirement implicated in a case like this where there is just the one doctor, the ALJ is adopting that doctor's views, and there's no competing medical testimony? Certainly, the ALJ is obliged to discuss the medical opinion evidence, and that's done here on page 24 of the record. There's an extensive several- several page discussion or several paragraph discussion of Dr. Khanda Carter's findings and his opinion. And he says it's persuasive. I know there's been some discussion in the reply brief about the validity of the regulations under the constitution or under the Social Security Act. I could address that as the court would like. I would only say that the rulemaking authority is broad for the commissioner and we sought to develop rules that would allow for efficient and fair consideration of all the evidence. And the two most important factors are consistency and supportability. And so, again, the ALJ addresses that. And again, everything aligns well. Dr. Khanda Carter says that he is mild Crohn's essentially, I think I could boil it down to that, would not prevent him from working. ALJ agrees. And that's it. And beyond that, I would say, to the extent there's any concerns on the mental side, no doctor finds that Pepper cannot work due to his mental impairments. In fact, Dr. Khanda Carter says he can work and working would help him psychologically. Um, so- Counsel, counsel, I'm going to ask my co-panelists if they have any further questions for you. Judge Harris, do you have some more questions you wish to ask? Judge Rushing? No, thank you. Um, thank you very much, sir. I appreciate it. All right, Mr. Piedmonte, do you want to, do you have some rebuttal time? Uh, yes, Your Honor. Thank you. Excuse me. First, just to respond to Mr. Feldman's statement that he made more than once that no doctor said that Mr. Pepper was disabled. Well, if they had, he would have been over there arguing with, that's an issue reserved for the commissioner. They can't give that opinion. Um, what doctors do is they give their opinions on functional limitations, which Dr. Khanda Carter did. The ALJ said she found that, um, opinion persuasive, but her findings are inconsistent. Because if, um, one, it's not clear if she accepted the, opinion that he would need three to four unscheduled bathroom breaks and accounted for that, or if she was rejecting that, it's not, it's not clear if she was or was not. Um, but then she doesn't explain, if she, um, did accept it, she doesn't explain why she didn't accept the vocational expert's testimony, that that would preclude work. Uh, this court, numerous times in Mascio, in Wood, in Monroe, in, in, in case after case, has said ALJs have to explain why they make the findings that they make. They can't just make conclusory statements. They, they need to, to give explanations. And here she's rejecting an expert testimony, in theory, um, either the VEs without explanation, or Dr. Khanda Carter's based on mistaken beliefs or, or mistakes of fact. I thought the ALJ did a pretty good job here, but the basic point at the bottom is that your, your good client has to try, um, you just can't just have somebody on disability because a lot of times trying and working has great medicinal effects. And I think that's what was, what really was driving a lot of this hearing below, is you have to give it a shot. You have to attempt, you have to try to make yourself a productive member of society, instead of just drawing benefits for gosh knows how many decades it would, would stretch out. But it just comes down, doesn't it? You gotta try. At that age, particularly, you gotta try. I, and I don't disagree with that, Your Honor. And, and Mr. Pepper did, did try. And the, but the issue we're looking at today, on this record, he's not able to. Now, he certainly could, if he improves and is able to, Your Honor, I'm about to run out of time. May I finish responding? Yes, sir, you may. Thank you. Um, if he improves and, and if he's, because there's other medication Dr. Kandekar wanted to try, but insurance wouldn't approve it, and he couldn't get some procedures done because the free clinic wouldn't allow them, or wouldn't provide them. If he is able to get those things, or get some, some further treatment, and his condition improves, then he can come off disability. But based on this record, with this evidence, based on that vocational expert's testimony, and Dr. Kandekar's opinion, that the ALJ did or did not accept that portion, he is not able to work on this record. And, and I would ask that you, uh, remand this case for a re-hearing for clarification, uh, on, on those two points. Thank you. We thank you, sir. Um, we'll take a five-minute break and then resume with our third case. We'll take a five-minute recess. This honorable court will take a brief recess.
judges: J. Harvie Wilkinson III, Pamela A. Harris, Allison J. Rushing